PEOPLE v. JELKS

1. CRIMINAL LAW—NEW TRIAL—NEWLY-DISCOVERED EVIDENCE—DIFFERENT RESULT.

Newly-discovered evidence offered to show that defendant's automobile, identified by the victim as the one used by him in commission of rape and robbery, was in fact disabled and at a collision repair shop when the crimes were committed, consisting of an affidavit by a person who said he was responsible for incoming cars at an automobile repair shop, that defendant brought in his automobile on April 1, 1969, for a repair estimate and that the automobile was still there on the date of the deposition, did not render a different result probable on retrial where the evidence at trial was that the crimes were committed on April 13, and that the automobile used by the criminal was smoking and he explained to the victim that he had just taken it out of the shop, and defendant testified that he had received a key from the owner of the shop "to go and open the car and work."

REFERENCES FOR POINTS IN HEADNOTES

[1] 39 Am Jur, New Trial §§ 156–176.
[2, 3] 21 Am Jur 2d, Criminal Law §§ 222, 309–317.
[4] 29 Am Jur 2d, Evidence §§ 320, 321, 333.

2. Criminal Law—Assistance of Counsel—Effective Assistance.
   Defense counsel's failure to produce at trial a receipt claimed by defendant to show that defendant's car was in a repair shop on the day a crime was committed in which a car identified as defendant's was used is not a showing of denial of effective assistance of counsel where the record does not show that the existence of the receipt was made known to the trial lawyer before trial, and where defendant did not claim in his motion for new trial that his trial lawyer failed to prepare for trial diligently and conscientiously, nor ask for a hearing on a claim that he was denied the effective assistance of counsel.

3. Criminal Law—Assistance of Counsel—Effective Assistance—Preserving Question.
   A defendant must make a testimonial record at the trial court level in connection with a motion for a new trial which evidentially supports his claims of ineffective assistance of counsel and excludes reasonable hypotheses consistent with the view that his trial lawyer represented him adequately.

4. Criminal Law—Assistance of Counsel—Effective Assistance—Defendant Testifying—Prior Convictions.
   Bringing out defendant's prior police record on direct examination of defendant by his own lawyer in a criminal case rather than letting the prosecutor stress it on cross-examination is not necessarily evidence of incompetence of defendant's trial lawyer.

Appeal from Recorder's Court of Detroit, George W. Crockett, Jr., J. Submitted Division 1 January 11, 1971, at Detroit. (Docket No. 8318.) Decided May 18, 1971. Leave to appeal denied, 386 Mich 768.

John Lee Jelks was convicted of armed robbery, rape, and an act of gross indecency with a female person. Defendant appeals. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Luvenia D. Dockett,* Assistant Prosecuting Attorney, for the people.

*Arthur J. Tarnow,* State Appellate Defender, for defendant on appeal.

Before: V. J. BRENNAN, P. J., and FITZGERALD and LEVIN, JJ.

LEVIN, J.  The victim of the criminal offenses of which the defendant, John Lee Jelks, was convicted testified that her automobile became inoperable early in the morning of April 13, 1969, while she was driving on an expressway.  She said that Jelks approached and offered to assist her, and, when her automobile could not be restarted, offered to drive her home.  She claimed that he drove into alleys near her home, threatened her with a gun, and robbed and raped her, and required her to commit an act of gross indecency.

She identified Jelks' photograph from reels containing a large number of photographs and two weeks later picked him out of a lineup composed of five men.

She testified that when the criminal acts were committed there was a card hanging in the back window of Jelks' automobile.  A police officer testified that the victim had mentioned the card before Jelks was apprehended.  Both the officer and the victim testified that the card described was in the back window of Jelks' automobile when they viewed the automobile after Jelks was in custody.

Four alibi witnesses testified that Jelks was with them at the time the crimes were committed.  The judge, who sat without a jury, in stating his findings said that he did not believe the alibi witnesses and indicated that he believed the victim's testimony. He said that he was satisfied that the lineup was fair.  In conclusion he expressed his satisfaction beyond a reasonable doubt of Jelks' guilt of all

three charged offenses and convicted him of armed robbery,[1] rape,[2] and committing an act of gross indecency with a woman.[3]

Jelks filed a motion for a new trial on the ground that the automobile identified by the victim as the one used by him when the crimes were committed was in fact disabled and at a collision repair shop from April 1, 1969, continuously to and through April 13, 1969, the date on which the crimes were committed. In support of his motion he submitted a post-trial affidavit of a person who swore that he was responsible for incoming cars at the repair shop, that on April 1, 1969, the defendant brought in his automobile for a repair estimate and that the estimate was $450. The affidavit concludes with the statement that the automobile had remained at the repair shop since April 1, 1969, and was still there on the date of the affidavit. The judge denied the new trial motion.

At the trial the victim testified that while she was riding in Jelks' automobile it was "smoking" and that he told her it was not operating properly and explained that he had just taken it out of the "shop".

When Jelks testified, he said that he had received a key from the owner of the shop "to go and open the car and work". He also claimed that he had a "receipt" from the repair shop which was in the hands of an attorney who was representing him in civil litigation arising out of an automobile accident that occurred on April 1, 1969. He said he showed the receipt to a police officer.

The officer testified that Jelks said he took the automobile to the repair shop on April 1, 1969, that

---

[1] MCLA § 750.529 (Stat Ann 1971 Cum Supp § 28.797).

[2] MCLA § 750.520 (Stat Ann 1954 Rev § 28.788).

[3] MCLA § 750.338b (Stat Ann 1954 Rev § 28.570[2]).

he did not exhibit a receipt, and that persons employed at the repair shop were unable to recall the exact date on which the automobile was brought in but thought it was between April 11 and April 18.

A photocopy of a receipt or estimate, dated April 1, 1969, issued by the repair shop is attached to Jelks' brief on appeal. The estimated cost of repair is $450 and payment of $20 is acknowledged, leaving a balance of $430. The document does not purport to show whether Jelks' automobile was immobile between April 1 and April 13 or the date on which it was actually delivered to the repair shop.

Jelks' testimony at the trial that he had been trying to obtain the return of the receipt does not compel the conclusion that he exerted reasonable diligence to obtain it and was unable to produce it at the trial. Nor do we think, in the light of his testimony that he had a key to the repair shop and, thus, access to the automobile, and the victim's testimony that the automobile was smoking and that Jelks had told her that he had just taken it from the shop, that the alleged newly-discovered evidence is "such as to render a different result probable on a retrial".[4] Accordingly, we do not have an adequate basis for concluding that the judge abused his discretion in denying Jelks' motion for a new trial.

Jelks' alternative contention that he was denied the effective assistance of counsel is largely predicated on his trial lawyer's failure to obtain and produce the receipt. But the record does not show that the existence of the receipt was brought to the attention of his trial lawyer before the trial.

---

[4] See *Canfield v. City of Jackson* (1897), 112 Mich 120, 123; *People v. Bauman* (1952), 332 Mich 198, 202; *People v. Keiswetter* (1967), 7 Mich App 334, 344.

Jelks' motion for a new trial was based entirely on his claim that he could not have committed the crime because the automobile identified by the victim was at the repair shop at the time the crime was committed. He did not, in his new trial motion, claim that his trial lawyer failed diligently and conscientiously to prepare for trial, nor did he ask for a hearing on a claim that he was denied the effective assistance of counsel. We could not properly find, based solely on Jelks' assertions on appeal, that his trial lawyer was lacking in diligence in failing to produce or to seek production of the receipt.

Jelks' trial lawyer did not call as witnesses any of the garage personnel. His reasons for failing to do so do not appear on this record. Perhaps, as defendant alleges, the lawyer had not properly prepared his case and did not know that Jelks' car might have been delivered to the garage before the date the crime was committed. On the other hand, he might have known of Jelks' possible defense but rejected it because, after investigation, he concluded that it was insubstantial or would backfire.

The people did not endorse the garage personnel even though there is authority which tends to support the view that they are *res gestae* witnesses;[5] but the failure of Jelks' trial lawyer to object at the trial to the failure of the people to endorse them leaves the matter in limbo. Again, we do not know whether the failure to object was the result of ignorance of the law, lack of diligence in preparation, indifference, or trial tactics.

---

[5] Witnesses other than those present at the time a crime is committed may be *res gestae* witnesses whom the people are obliged to call. See *People v. Ake* (1961), 362 Mich 134; *People v. Kayne* (1934), 268 Mich 186; *People v. Etter* (1890), 81 Mich 570; *People v. Dickinson* (1966), 2 Mich App 646.

A convicted person who attacks the adequacy of the representation he received at his trial must prove his claim. To the extent his claim depends on facts not of record, it is incumbent on him to make a testimonial record at the trial court level in connection with a motion for a new trial which evidentially supports his claim and which excludes reasonable hypotheses consistent with the view that his trial lawyer represented him adequately.

It is further contended that the incompetency of Jelks' trial lawyer is evidenced by the questions the lawyer asked Jelks concerning his prior police record. However, many defense lawyers believe it better to bring this negative information out initially than to let the prosecutor stress it during cross-examination.

This case was tried to a judge rather than to a jury. It is entirely conjectural whether the prejudicial matter injected by the defendant's lawyer diverted the judge from the meritorious question. We are disinclined to conclude that it did. We must be especially wary about ordering a new trial where the defendant's trial lawyer is responsible for the introduction of the evidence relied on by his appellate lawyer as justifying a new trial, lest we enable counsel to build in "error" entitling his client to a new trial. Again, we are handicapped by the absence of a testimonial record on the issue of the adequacy of the representation the defendant received at the trial level.

Jelks was represented by a retained lawyer at the lineup. While he claims that he was dressed differently than the other four persons who, together with him, comprised the lineup, there was conflicting testimony on this point. The judge did not err in finding the lineup to be fair.

This case illustrates the importance of the police recording the steps they take in their investigation of a crime with care so that they can be reconstructed from a more reliable record than the memory of police officers and witnesses. If, when the defendant Jelks was interviewed, the conversation had been transcribed, the trier of fact would have had a better basis for deciding whether Jelks did in fact tell the police officer about the receipt. If photographs had been made of the lineup, the trier would not have been dependent on conflicting testimony concerning the fairness of the lineup. If the victim's statement to the police had been transcribed, the trier would know whether, before she saw the automobile at the collision repair shop, she described it as she described it at the trial—whether there is any basis for the defendant's claim on appeal that the automobile she described at the trial was the automobile that she saw at the collision repair shop, and not the automobile used when the crime was committed.

In a case where everything turns on one witness's identification and testimony, it is not too much to expect the police and the prosecutor to take reasonable precautions against the conviction of the innocent and to facilitate an independent judicial scrutiny at the trial of the testimony of the complaining witness. Leaving the matter dependent upon that witness's recollection and the recollection of police officers is not conducive to the kind of searching inquiry appropriate in a case of this kind. The outraged victim is naturally anxious to bring the offender to justice, and there is great risk that in her zeal she may become a partisan; a sympathetic police officer too may lose objectivity. Safeguards should be taken to protect against such

tendencies, but such safeguards have not as yet been established or made obligatory on the police or prosecutorial authorities.[6]
Affirmed.
All concurred.

---

[6] The defendant is, indeed, correct in saying that "the only legitimate object of the prosecution is 'to show the whole transaction, as it was, whether its tendency be to establish guilt or innocence' ". *Hurd* v. *People* (1872), 25 Mich 405, 416.