PEOPLE v SPENCER

PEOPLE v BOOKER

OPINION OF THE COURT

1. CRIMINAL LAW—INSTRUCTIONS TO JURY—JUDICIAL COMMENTS.

A trial judge does not commit reversible error when, in his instructions, he correctly summarizes the theory of the defense as being alibi and not particularly that the crime in question was not committed.

2. CRIMINAL LAW—ASSISTANCE OF COUNSEL—EFFECTIVE COUNSEL—TESTIMONIAL HEARING.

A trial court need not order a testimonial hearing upon a motion for new trial based upon a bare allegation of inadequacy of representation of counsel where the facts are not of record; he must have something more before him to justify such a "testimonial hearing" than a mere complaint.

DISSENT BY LEVIN, J.

3. CRIMINAL LAW—ASSISTANCE OF COUNSEL—EFFECTIVE COUNSEL—TESTIMONIAL HEARING.

*Allegations in a motion for new trial that lineup identifications and in-court identifications of defendants were tainted by observation of the defendants by the identifying witnesses before the lineup, and that no objections were made by defendants' counsel, were sufficient to require a testimonial hearing, because if the in-court identifications did not have an independent origin and if the failure to object was the result of a mistake by their lawyer then the defendants might be entitled to a new trial.*

4. CRIMINAL LAW—ASSISTANCE OF COUNSEL—EFFECTIVE COUNSEL—TESTIMONIAL HEARING.

*The allegations that because defendant's trial lawyer did not question the validity of the arrest and the admissibility of*

REFERENCES FOR POINTS IN HEADNOTES
[1] 53 Am Jur, Trial §§ 650–660.
[2–4] 53 Am Jur, Trial § 459.

*evidence seized amounted to inadequate representation of counsel was sufficient to require a testimonial hearing where the record disclosed that the arrest of one of the defendants was based on questionable identification by the police and witnesses and defendants ought to be able to explore the validity of such arrest in a testimonial hearing.*

Appeal from Recorder's Court of Detroit, John R. Murphy, J. Submitted Division 1 October 11, 1972, at Detroit. (Docket No. 11883.) Decided March 26, 1973. Leave to appeal denied, 390 Mich 754.

Panel Spencer and Leslie Booker were convicted of manslaughter. Defendants appeal. Affirmed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Dominick R. Carnovale,* Chief, Appellate Department, and *Luvenia D. Dockett,* Assistant Prosecuting Attorney, for the people.

*Fred K. Persons,* for defendants on appeal.

Before: V. J. BRENNAN, P. J., and LEVIN and O'HARA,* JJ.

O'HARA, J. This is an appeal of right by two defendants from a conviction of manslaughter, MCLA 750.321; MSA 28.553. There was one trial. Both defendants were represented by the same retained counsel. Other counsel represents them on appeal.

There are 12 assignments of error. One contains seven subdivisions. We have examined them all. Those we do not discuss have not been disregarded. Rather we consider them to have raised

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

issues not preserved on appeal or to have been of insufficient substance to merit decisional discussion.

The people accepted defendants' statement of facts except for what they call "some biased opinions and matters not of record". We will endeavor to avoid the controversial areas.

This much is undisputed. Defendant Spencer's home was burglarized. A substantial amount of personal property was taken. Some time subsequent thereto Spencer contends he received an anonymous telephone call advising him that the stolen property was at 3884 Crane in Detroit and that the thief's name was Jerry Rollins. Spencer, together with codefendant Booker and one Washington, went to a precinct police station and reported this. Spencer asked if a search warrant could be obtained. The police sergeant advised him the identity of the caller was necessary. Spencer then inquired if he could go to the specified premises, ask for Rollins, and while at the door possibly see if his television set was in the living room. The police indicated that much would be permissible, but not to "cause any difficulty". The foregoing took place around 7:30 p.m. At 9 p.m., or thereabouts, decedent who resided at 3884 Crane was killed. A pathologist testified the cause of death was shotgun wounds to the head and chest. The police were informed of the homicide and were furnished a description of several persons at, near, and behind the involved residence at the time of the shooting. They went to the Spencer residence about 1 a.m. They were admitted by Spencer's wife. While in the dining room, the police detective saw Spencer place an object later identified as a pistol on a buffet in the dining room. The detective placed Spencer under arrest, searched him

permissibly for offensive weapons, and found 16 shotgun shells in his jacket pocket.

Defendant Booker was arrested the following morning. Both were charged with second-degree murder. Both were bound over on the charge of manslaughter. The second-degree murder count was dismissed by the magistrate.

There is no point in discussing the minutiae of the testimony and the conflicts therein. Various witnesses identified defendants as being at the scene of the fatal shooting. Others picked them out of a lineup at which counsel of their choice was present.

There was the usual amount of dilution of lineup identification and identification at the scene. No conflict existed as to the fact that at the scene, at the time, there was a gold Cadillac. Spencer owns a gold Cadillac. The shotgun and pistol taken from the Spencer home were admitted in evidence. Witnesses testified to having heard shotgun and pistol fire at the scene.

In substance the defense was that after defendants' visit to the police station on the night in question they went to their respective homes and did not leave. This contention was supported by testimony of the defendants and their wives. Obviously the jury rejected it.

We believe the indicia of defendants' complicity was sufficient to have justified the arrest. The proofs adduced on examination supported binding the defendants over for trial. Under our system the ultimate determination of the truth or falsity of the testimony of the various witnesses for the people and defendants was left to the jury. Absent legal error, ours is not to disturb their finding.

What are the legal errors complained of? First, it is contended that the arrests which were made

without warrants were made on less than probable cause. The point is academic. Subsequent valid arrests with warrants were made.

The question as to admission of the pistol and shotgun as exhibits is not before us for review. No motion to suppress was made.

Appellate counsel argued most vigorously that the trial judge in his instructions committed reversible error when he said:

"I do not believe that [defense counsel] argued terribly much about the elements of this case, whether or not a manslaughter had been proved. * * * I believe it is their theory that * * * they were not present and they do not particularly say that a manslaughter was not committed. They are saying that they were not present at all at the time of the commission."

Perhaps it was not necessary for the trial judge to mention what the defense was *not,* rather than what it was. If it were error at all it certainly was not reversible error. As far as the proofs are concerned there can be no question that decedent was the victim of a felonious killing of some kind. There was no suggestion of a self-inflicted wound, nor an accidental shooting. No question of self defense or any other kind of justification was ever mentioned. At best or worst the trial judge simply summarized for the jury the theory of the defense and in so doing mentioned that they need not particularly question the fact that manslaughter had been committed. We cannot forego mentioning that they would have been ill circumstanced to challenge the court's statement. According to them and their witnesses they were not present and thus must have been totally unaware of what took place. We find no reversible error in the quoted excerpt of the charge.

Next, defendants claim there was a conflict of
interest on the part of their trial counsel in repre-
senting them both. We can find no conflict of
interest. Counsel was retained. He conducted the
defense. Both defendants relied heavily on the fact
that they were not and could not have been at the
scene at the time of the fatality. It was a joint
defense—whence the conflict? We find none.

There is an allegation of error based upon an
alleged improper offer of a bargained plea to one
defendant, on a charge of felonious assault in
return for a dismissal of the manslaughter charge.
Whatever the facts are no such bargain was even
made. We cannot see how the allegation affects the
outcome of the case.

Then comes the more and more frequently as-
serted contention of ineffective representation or
assistance of counsel. This is made in this case
together with the contention that since defendants
asserted this error they are entitled *as of right* to
a testimonial hearing on the issue. The principle
authority cited is *People v Jelks,* 33 Mich App 425,
431 (1971). Particular reliance is placed on the
following language from *Jelks:*

"A convicted person who attacks the adequacy of the
representation he received at his trial must prove his
claim. To the extent his claim depends on facts not of
record, it is incumbent on him to make a testimonial
record at the trial court level in connection with a
motion for a new trial which evidentially supports his
claim and which excludes reasonable hypotheses con-
sistent with the view that his trial lawyer represented
him adequately."

Quite so, and so be it. But we do not read this
language to mean that every bare allegation of
inadequacy of representation upon a motion for a
new trial mandates that the trial court must order

a "testimonial hearing". We reject the contention, and decisionally so hold. The question is thus framed for review and disposition by the Supreme Court if we are wrong. We find no conflict in this holding with recently decided *Holt v State Bar Grievance Board,* 388 Mich 50 (1972), authored by Mr. Justice Williams. To us that case says that an indigent defendant is entitled to the same conscientious endeavors by his appointed counsel as is the better circumstanced defendant who retains counsel of his choice. Surely this is fundamental and is the underlying concept of furnishing the indigent counsel at all. If *Jelks, supra,* is relevant it is only to the point that the trial judge who presided over the case was alert to any miscarriage of justice and felt he must have something more before him to justify a "testimonial hearing" than mere complaint. We agree.

The danger of a more restricted holding is to deny the advocate his hard earned prerogative and professional birthright to adopt his own trial tactics and strategy.

The trial judge at the time of the sentencing observed:

"I did not disagree with the verdict of the jury. If I disagreed with anything I disagreed with the examining magistrate that reduced the charge from murder in the second degree to manslaughter."

Under our system as constitutionally ordained and implemented by court rule, statute, and case precedent, defendants had a fair trial. We can do naught but affirm.

V. J. Brennan, P. J., concurred.

Levin, J. *(dissenting).* The defendants were entitled to a testimonial hearing on their allegations

that their defense was prejudiced by inadequate representation at trial. Their claims were not merely "asserted" upon "bare allegation" as stated by the majority.

In their delayed motion for a new trial the defendants alleged:

"That the in-court identification of both defendants by each of the witnesses was tainted by pre-court observation of the defendants at the police station prior to showup, and no objections were made to such in-court identification by counsel for defendants.

"That the lineups of defendants were tainted by observations made by witnesses of defendants in the police station, several minutes prior to the showup, and no objections were made thereto."

The motion goes on to ask that testimony "be taken by the trial court in order to ascertain the facts raised by this motion to conform with *People v Jelks,* 33 Mich App 425, 431 (1971)".

In the *Jelks* case we said (p 431):

"A convicted person who attacks the adequacy of the representation he received at his trial must prove his claim. To the extent his claim depends on facts not of record, it is incumbent on him to make a testimonial record at the trial court level in connection with a motion for a new trial which evidentially supports his claim and which excludes reasonable hypotheses consistent with the view that his trial lawyer represented him adequately."

At the hearing on the motion for a new trial the defendants' lawyer said:

"On 464 the witness testified all of the young men went to the police station at the show-up at the same time. I have evidence to substantiate the fact that the defendants were taken to the police, to the police station, for the show-up by their counsel and all of these

young men were sitting there in the police station at
the time that he walked in and they saw the defend-
ant."

In response the judge said that this issue was
not raised at the trial. Defendants' lawyer ac-
knowledged that this was true, and said that it
was because the issue was not raised at the trial
that he was raising it now, and that he was
prepared evidentially to support his claim: "I am
making it now which evidentially supports his
claim of ineffective assistance of counsel and ex-
cludes reasonable hypothesis that the trial lawyer
represented him adequately. I raise this on the
fact that this wasn't done."

The judge then asked the defendants' lawyer:
"Do you want a hearing on that issue?" The
lawyer responded that there were a number of
other issues raised in his motion for a new trial
and that he would ask the court to pass on those
first and if the defendants did not obtain a new
trial on those grounds then he would ask the court
to hold an evidentiary hearing on the ineffective
assistance of counsel issue. The hearing being
conducted on that day then proceeded to a conclu-
sion.

A few weeks later the parties again appeared
before the judge, and he announced his decision
denying the motion for a new trial. The defend-
ants' lawyer then said, "Now, may I have a hear-
ing?" The judge responded: "I am not inclined to
grant a rehearing on the issues which were raised.
I think I have indicated that I thought that having
tried the case, and having seen counsel who repre-
sented the defendants, I thought they were ade-
quately represented by counsel. Counsel did a good
job in representing them."

The judge applied the sham-trial standard which

focuses attention on the entire representation of the accused person by his lawyer. See *People v Degraffenreid,* 19 Mich App 702, 711 (1969). While the defendants asserted that they had not received the "effective assistance of counsel", the essence of the claim[1] advanced in this case was that their trial lawyer had made a major mistake—a mistake of such importance that, even if they were not deprived of the constitutional right to counsel, they were entitled to a new trial.

"The sham trial standard is applicable only where the defendant asserts deprivation of his constitutional right to counsel and seriously seeks to demonstrate that he was represented by a bad lawyer. It is not the correct standard by which to judge a claim that the defendant is entitled to a new trial because of a serious mistake made by a good lawyer.

"The sham trial standard focuses attention on the lawyer and the totality of his representation of his client. A claim that a constitutionally adequate lawyer made a serious mistake and that the court should relieve the client of that error focuses our attention on the mistake itself and its significance in bringing about the defendant's conviction." *People v Degraffenreid, supra,* p 717.

Earlier in *Degraffenreid* we said (p 716):

"Where the lawyer's mistake is of such serious proportion that it may have been decisive, where but for the lawyer's mistake the defendant might not have been convicted, the court may, despite failure to have preserved the error by timely objection, grant a new trial."

Not infrequently claims of inadequate representation depend on facts not of record, as in this case

---

[1] *Cf. Hileman v Indreica,* 385 Mich 1, 10 (1971), refusing to allow a too narrow reading of an "effort of counsel".

where it is claimed that the eyewitnesses saw the defendants before the lineup.

The importance in this case of the identification testimony of the eyewitnesses is apparent without a testimonial record. However, without a testimonial record we do not know whether the defendants can establish that the eyewitnesses did in fact view them before the lineup, nor do we know whether this could have been or was brought to the attention of their trial lawyer at or before the trial and, if this was brought to the lawyer's attention, why he failed to object to the testimony of the eyewitnesses.

If the defendants can prove at a testimonial hearing, as their appellate lawyer claims they can, that the eyewitnesses viewed them before the lineup, such a viewing, not in the presence of their lawyer, without that safeguard may very well have effectively deprived them of their *Wade* rights.[2] In such event, if the in-court identifications did not have an independent origin and if the failure to object to the in-court identifications was due to a mistake of their lawyer then the defendants might indeed be entitled to a new trial.[3]

I find it difficult to understand the majority's refusal to require a testimonial hearing. I cannot imagine what more a defendant's appellate lawyer

[2] *United States v Wade,* 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967).

[3] As indicated in *Degraffenreid, Jelks,* and other cases, merely because a mistake has occurred the defendants would not necessarily be entitled to a new trial. It might be possible for the people to establish, as indicated in *People v Young,* 21 Mich App 684 (1970), cited by the defendants' appellate lawyer at the time of the hearing on the motion for a new trial, that the in-court identifications were of independent origin and thus not irretrievably tainted by any error in the procedures followed at or before the lineup identification, or for other reasons it may appear that the lawyer's mistake, if there was a mistake, did not deprive the defendants of a fair trial—that the error was harmless beyond a reasonable doubt.

could reasonably be expected to do before the actual holding of such a hearing to indicate the substantiality of his client's claim.

In their motion for a new trial the defendants also rely on the failure of their trial lawyer to move "to suppress the shotgun shells and/or the pistol". I therefore must also express my doubts about the correctness of the majority's ruling that the arrest of the defendant Spencer made without a warrant was valid. Again, this issue was not raised at the trial. The record is incomplete. A complete record might support the majority's conclusion; the present record does not—again, a *Jelks* hearing is required.

On the present record it appears that the only information which the police had when they arrested Spencer was that earlier on the day of the shooting he had visited the police station and complained about a resident of the house where the fatal shooting occurred. The eyewitnesses identified the assailants as Negro males, heavy build, one age 34, 6 feet; the other age 33, 5 feet 11 inches. Spencer was 47 years of age, 5 feet 2-1/2 inches tall, and weighed 145 pounds.

There were other items of identification information, but the record does not indicate whether they fit Spencer.

Shortly before they arrested Spencer at his home the police observed him place a pistol on a buffet in the dining room. Since the police knew that the victim had been killed with a shotgun that added nothing to their previous information.

Again, since the defendants' trial lawyer did not question the validity of the arrest, the issues of probable cause to arrest and lawfulness of the seizure of the shotgun shells and pistol were not squarely presented at trial. There is the appear-

ance of serious error on the part of the defendant's trial lawyer for failing to question the validity of the arrest, which defendants also ought to be able to explore in a *Jelks* hearing.

There is ample basis for requiring a testimonial hearing in connection with the issues raised in defendants' delayed motion for a new trial.