# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANTHONY DUNBAR,

        Defendant-Appellant.

UNPUBLISHED
December 4, 2014

No. 315747
Genesee Circuit Court
LC No. 2012-031104-FC

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ERIC ROSHAWN SMITH,

        Defendant-Appellant.

No. 315991
Genesee Circuit Court
LC No. 2012-031109-FC

Before: RIORDAN, P.J., and SAAD and TALBOT, JJ.

PER CURIAM.

Defendants appeal their separate jury trial convictions under MCL 750.529, MCL 750.224f, and MCL 750.227b. For the reasons stated below, we affirm both convictions.

## I. FACTS AND PROCEDURAL HISTORY

Defendants robbed a female victim in the parking lot of the Clover Tree apartments in Flint Township. The victim testified that after she parked her car, a man wearing black shorts and a black shirt approached her and asked for the time. He then pulled a gun and demanded her money. The victim saw a second man nearby wearing a white tank top, whom she believed was acting as a lookout. The victim threw her purse, keys, and groceries to the ground, and ran to her apartment where she immediately called the police. Responding officers detained the two defendants and a third person, Averee Littlejohn, at a nearby bus stop. The victim was brought to the bus stop, where she identified defendant Eric Smith as the gunman and defendant Anthony Dunbar as the lookout. The police found a handgun inside Littlejohn's purse and $210 cash in

-1-

Littlejohn's bra. She was also charged in the matter, but pleaded guilty to a reduced charge pursuant to a plea agreement whereby she agreed to testify against the two defendants.

The prosecution subsequently charged Dunbar and Smith with identical charges of armed robbery, MCL 750.529, felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony, MCL 750.227b. They were charged jointly, but before separate juries.

Dunbar's jury convicted him of the felon-in-possession charge, but acquitted him of the remaining crimes. Smith's jury convicted him of all three charges. The trial court sentenced Smith as a fourth habitual offender, MCL 769.12, to concurrent prison terms of 240 to 360 months for the armed robbery conviction, and 58 to 120 months for the felon-in-possession conviction, to be served consecutive to a two-year term of imprisonment for the felony-firearm conviction.

On appeal, Dunbar argues that the prosecution did not present sufficient evidence to sustain his conviction. Smith claims that the prosecution: (1) did not present sufficient evidence to sustain his conviction; and (2) committed misconduct. He also asserts that the trial court erred when it: (1) required him to file notice of an alibi defense; (2) excluded evidence of a text message supposedly sent by Littlejohn; and (3) sentenced him under offense variables (OV) 4 and 14.

## II. DEFENDANT DUNBAR'S APPEAL

A challenge to the sufficiency of the evidence is reviewed de novo. *People v Henry (After Remand)*, 305 Mich App 127, 142; 854 NW2d 114 (2014), lv pending. We review the evidence in the light most favorable to the prosecution to determine whether "a rational trier of fact could find that the evidence proved the essential elements of the crime beyond a reasonable doubt." *People v Harverson*, 291 Mich App 171, 175; 804 NW2d 757 (2010). The testimony of a single witness can suffice to persuade a jury of a defendant's guilt beyond a reasonable doubt. *People v Jelks*, 33 Mich App 425, 432; 190 NW2d 291 (1971). Moreover, "it is well settled that this Court may not attempt to resolve credibility questions anew." *People v Gadomski*, 232 Mich App 24, 28; 592 NW2d 75 (1998).

Here, Dunbar denies that he was ever in possession of a firearm, and unconvincingly argues that the prosecution presented insufficient evidence to secure his felon-in-possession conviction under MCL 750.224f. The prosecution actually presented more than sufficient evidence to convict Dunbar of violating the statute.

Littlejohn testified that Dunbar put a firearm in her purse when they met at the bus stop soon after the robbery was committed. This testimony was sufficient to prove Dunbar's possession of a firearm. Although Dunbar argues that the jury determined portions of Littlejohn's other testimony were not credible, inasmuch as it acquitted him of the armed robbery and felony-firearm charges, the jury was "free to believe or disbelieve, in whole or in part, any of

the evidence presented." *People v Perry*, 460 Mich 55, 63; 594 NW2d 477 (1999). It clearly believed Littlejohn's testimony as to the firearm, and, again, we "may not attempt to resolve credibility questions" on appeal. *Gadomski*, 232 Mich App at 28.[1]

Accordingly, the prosecution presented sufficient evidence to sustain Dunbar's conviction under MCL 750.224f, and his arguments to the contrary are without merit.

## III. DEFENDANT SMITH'S APPEAL

## A. SUFFICIENCY OF EVIDENCE

Identity is an essential element in a criminal prosecution, and the prosecutor must prove the defendant's identity as the perpetrator of a charged offense beyond a reasonable doubt. *People v Oliphant*, 399 Mich 472, 489; 250 NW2d 443 (1976); *People v Kern*, 6 Mich App 406, 409-410; 149 NW2d 216 (1967). Positive identification by a witness may be sufficient to support a defendant's conviction. *People v Davis*, 241 Mich App 697, 700; 617 NW2d 381 (2000). "The credibility of identification testimony is a question for the trier of fact that we do not resolve anew." *Id.*

Here, Smith wrongly asserts that the prosecution presented insufficient evidence to establish his identity as the person who robbed the victim. The victim identified Smith as the gunman who robbed her, both when the police brought her to a nearby bus stop briefly after the offense, and again at trial. The victim had previously ruled out another suspect the police asked her to view. Although the victim was ambivalent about identifying Smith at the preliminary examination, she explained at trial that her ambivalence was caused by defendant's behavior— the victim said she felt intimidated by a "hissy fit" Smith threw when she attempted to identify him.

Moreover, the jury heard other testimony that supported the reliability of the victim's identification testimony, such as her descriptions of the perpetrators' clothing and appearances to the 911 operator and a responding officer after the robbery.[2] Her descriptions of the gunman's clothing and facial hair accurately described Smith's clothing and facial hair at the time of his arrest. Although Smith argues that the victim failed to mention other distinguishing marks and features about him, and inaccurately described him as dark-skinned, it was up to the jury to determine what effect, if any, those matters had on the weight and reliability of the victim's

---

[1] Defendant also wrongly asserts that the jury verdict is inconsistent. The victim testified that she believed that the man in the white tank top (identified as Dunbar) acted as a lookout, but she did not say that the man made any overt actions in furtherance of the robbery. The jury might have entertained a reasonable doubt whether Dunbar actually participated in the robbery, but still believed he possessed the firearm that Littlejohn said he placed in her purse. And, in any event, juries are allowed to return inconsistent verdicts. *People v Lewis*, 415 Mich 443, 449; 330 NW2d 16 (1982).

[2] The victim gave these descriptions before the police took her to view any suspects.

identification testimony. And, again, we defer to the trier of fact's findings regarding the credibility of identification testimony. *Davis*, 241 Mich App at 700. The victim's testimony was thus sufficient to establish Smith's identity as the gunman beyond a reasonable doubt.


## B. ALIBI DISCLOSURE

Before trial, the prosecutor objected to Smith's presentation of an alibi defense, including through his own testimony, because he had not filed a notice of alibi as required by MCL 768.20. The trial court held that Smith could testify in support of his alibi if he provided a written notice stating the substance of his alibi. Counsel's notice stated that Smith was with a cousin at the Clover Tree apartment complex at the time of the robbery. A police detective then questioned Smith about his alibi. Smith told the officer that he was with his cousin, "Dre," at the Clover Tree apartments, but he denied knowing "Dre's" full or last name. Smith eventually stated that Dre was Andre Johnson, that they were not really cousins, and that Johnson was unlikely to testify because of outstanding warrants.

Despite the trial court's extensive efforts to accommodate Smith's dubious alibi defense, he now asserts that the trial court interfered with his constitutional right to present a defense when it: (1) required him to file a notice of alibi under MCL 768.20; and (2) supposedly compelled him to answer the detective's questions on his alibi in violation of his Fifth Amendment privilege against self-incrimination.

## 1. STANDARD OF REVIEW

Because Smith failed to raise these constitutional claims at trial, our review is limited to plain error affecting his substantial rights. *People v Hanks*, 276 Mich App 91, 92; 740 NW2d 530 (2007). "To establish plain error requiring reversal, a defendant must demonstrate that 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *Id.* (citation and internal quotations omitted). Issues involving the interpretation of a statute or constitutional provision are reviewed de novo. *People v Perkins*, 280 Mich App 244, 248; 760 NW2d 669 (2008).

The primary goal of statutory interpretation is to give effect to the intent of the Legislature. *People v Likine*, 492 Mich 367, 387; 823 NW2d 50 (2012). "The first step is to review the language of the statute itself. If the statute is unambiguous on its face, the Legislature will be presumed to have intended the meaning expressed, and judicial construction is neither required nor permissible." *Id.* Unambiguous language must be enforced as written. *People v Acosta-Baustista*, 296 Mich App 404, 407; 821 NW2d 169 (2012). "[N]othing will be read into a clear and unambiguous statute that is not within the manifest intent of the Legislature as derived from the language of the statute itself." *Id.* at 408 (citation and internal quotation marks omitted).

## 2. MCL 768.20

MCL 768.20 requires a defendant to file a notice of alibi defense at least 10 days before trial. In relevant part, it provides:

> If a defendant in a felony case proposes to offer in his defense testimony to establish an alibi at the time of the alleged offense, the defendant shall at the time of arraignment on the information or within 15 days after that arraignment but not less than 10 days before the trial of the case, or at such other time as the court directs, file and serve upon the prosecuting attorney a notice in writing of his intention to claim that defense. The notice shall contain, as particularly as is known to the defendant or the defendant's attorney, the names of witnesses to be called in behalf of the defendant to establish that defense. The defendant's notice shall include specific information as to the place at which the accused claims to have been at the time of the alleged offense. [MCL 768.20(1).]

In turn, MCL 768.21 states that "[i]f the defendant fails to file and serve the written notice prescribed in section 20 . . . , the court *shall* exclude evidence offered by the defendant for the purpose of establishing an alibi . . . ." (Emphasis added.)

The first sentence of MCL 768.20(1) describes when the prescribed alibi notice must be filed, namely, "[i]f a defendant . . . proposes to offer in his defense testimony to establish an alibi at the time of the alleged offense." The reference to "testimony" does not distinguish between testimony offered by a defendant and testimony offered by witnesses other than the defendant. The second and third sentences describe what type of information an alibi notice "shall" include. Although the requirement in the second sentence that the notice specify "the names of witnesses to be called in behalf of the defendant" suggests that a defendant may call other witnesses in support of an alibi defense, the third sentence stands alone and requires the alibi notice to "include specific information as to the place at which the accused claims to have been at the time of the alleged offense." There is no suggestion that this latter requirement does not apply when a defendant intends to "offer in his defense testimony to establish an alibi at the time of the alleged offense," but the defendant does not intend to call independent witnesses.

Here, defendant incorrectly claims that the trial court erred when it held that MCL 768.20 applies when the defendant is the only witness testifying in support of an alibi defense. There is nothing in the statute that suggests that the Legislature entertained any such exemption, and defendant's assertion to the contrary violates the proscription against reading terms into a statute that are not expressed by the statutory language.[3] *Acosta-Baustista*, 296 Mich at 408. The trial court thus correctly applied MCL 768.20 to defendant and forced him to comply with its mandates.[4]

---

[3] Defendant's citation to *People v Merritt*, 396 Mich 67; 238 NW2d 31 (1976), is poorly reasoned and irrelevant. That case interpreted an older version of MCL 768.20 that was subsequently amended to mandate that a defendant provide notice of his alibi defense, even where the defendant is the only source of the information for the notice.

[4] We also reject Smith's argument that the trial court improperly compelled him to submit to police questioning on his alleged alibi, in violation of his Fifth Amendment rights. *People v Wyngaard*, 462 Mich 659, 671–672; 614 NW2d 143 (2000). There is no evidence that he was compelled to submit to police questioning. The detective at the questioning testified that he

## C. EXCLUSION OF TEXT MESSAGE EVIDENCE

The trial court's evidentiary rulings, including whether evidence has been properly authenticated, are reviewed for an abuse of discretion. *People v Ford*, 262 Mich App 443, 460; 687 NW2d 119 (2004). "A trial court abuses its discretion when its decision falls outside the range of principled outcomes." *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010) (quotation marks and citation omitted). MRE 901(a) governs the authentication of evidence, and provides that: "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

Here, Smith says that the trial court erred when it excluded a text message purportedly sent from Littlejohn to Quentin Kayhee stating, "tell Eric I'm sorry, but I know Chuck" to explain why she testified against defendant Smith. Once again, Smith's claim is incorrect. To admit the text message under MRE 901(a), Smith, as a proponent of the evidence, needed to present evidence sufficient to support a finding that the text message was what Smith said it was—namely, a text message sent by Littlejohn to Quentin Kayhee. Moreover, because the message was offered to show that Littlejohn had falsely accused Smith, its relevance depended on a showing that it was actually sent by Littlejohn.[5]

Smith presented evidence that the text message came from a number assigned to Littlejohn's phone. Although that evidence was sufficient to support a finding that the text message was transmitted from Littlejohn's phone, that alone did not support a finding that it was Littlejohn who sent the message. And there was substantial evidence that Littlejohn did not send the message: Littlejohn testified that she did not have exclusive control of her phone at the time the text message was sent, she denied sending the message, the message did not appear in the outbox folder on her phone, and she explained that she did not even have Kayhee's phone number or any reason to have his number.

Under these circumstances, defendant Smith failed to satisfy his burden under MRE 901(a) of presenting evidence sufficient to support a finding that the text message was sent by Littlejohn. Accordingly, the trial court properly excluded the message on the ground that it had not been authenticated.

## D. PROSECUTOR'S CONDUCT[6]

---

asked defense counsel if he could discuss the alibi with Smith, thus indicating that Smith agreed to waive his Fifth Amendment right with counsel's consent and approval.

[5] See MRE 401.

[6] Smith asserts that the prosecution committed misconduct when it requested that Smith provide notice of his alibi in accordance with MCL 768.20(1). As noted, MCL 768.20(1) required Smith to provide notice of his alibi defense. And he was not compelled to submit to police questioning on his alibi. Accordingly, the prosecutor could not possibly have committed misconduct in connection with MCL 768.20(1).

Claims of prosecutorial misconduct are generally reviewed de novo to determine whether the defendant was denied a fair and impartial trial. *People v Ackerman*, 257 Mich App 434, 448; 669 NW2d 818 (2003). Unpreserved claims of prosecutorial misconduct are reviewed for plain error affecting the defendant's substantial rights. *People v Gibbs*, 299 Mich App 473, 482; 830 NW2d 821 (2013).

## 1. PLAIN ERROR

Here, Smith asserts that the prosecutor engaged in misconduct when, shortly before trial, he sent an email to the victim that contained a photograph of Smith. Although the prosecutor conceded at trial that it was improper of him to send the photo to the victim shortly before trial, defendant Smith did not object to the victim's testimony regarding the photograph when it was presented. Further, after the prosecutor's concession of error, the trial court ruled that Smith would be given an additional opportunity to question the victim about her identification, and Smith did not object to this procedure or request some other remedy, such as a *Wade*[7] hearing, mistrial, or that the victim's identification testimony be either suppressed or stricken. Therefore, this issue is unpreserved. *People v Stanaway*, 446 Mich 643, 687; 521 NW2d 557 (1994).

Because the prosecutor conceded that it was improper of him to send Smith's photograph to the victim, Smith has established a plain error.

## 2. DEFENDANT'S SUBSTANTIAL RIGHTS

An identification procedure "violates a defendant's right to due process of law when it is so impermissibly suggestive that it gives rise to a substantial likelihood of misidentification." *People v Gray*, 457 Mich 107, 111; 577 NW2d 92 (1998) (footnote omitted). "[A]n improper suggestion often arises when 'the witness when called by the police or prosecution either is told or believes that the police have apprehended the right person.'" *Id.*, quoting *People v Anderson*, 389 Mich 155, 178; 205 NW2d 461 (1973).[8] "Moreover, when 'the witness is shown only one person or a group in which one person is singled out in some way, he is tempted to presume that he is the person.'" *Gray*, 457 Mich at 111, quoting *Anderson*, 389 Mich at 178.

The court must evaluate the fairness of an identification procedure in light of the totality of the circumstances to ascertain whether the procedure qualifies as so impermissibly suggestive that it gave rise to a very substantial likelihood of irreparable misidentification. *People v Murphy (On Remand)*, 282 Mich App 571, 584; 766 NW2d 303 (2009). If a witness is exposed to an impermissibly suggestive pretrial identification procedure, the witness's in-court identification will not be allowed unless the prosecution shows by clear and convincing evidence that there is an independent basis for the in-court identification sufficient to purge the taint of the

---

[7] *United States v Wade*, 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967).

[8] In *People v Hickman*, 470 Mich 602, 603; 684 NW2d 267 (2004), the Michigan Supreme Court overruled *Anderson* to the extent that it "goes beyond the constitutional text and extends the right to counsel to a time before the initiation of adversarial criminal proceedings . . . ."

illegal identification. *People v Colon*, 233 Mich App 295, 304; 591 NW2d 692 (1998). The Court may hold an evidentiary hearing pursuant to *United States v Wade*, 388 US 218; 87 S Ct 1926; 18 L Ed 2d 1149 (1967), to determine whether the witness has an independent basis for an in-court identification. See *People v Kurylczyk*, 443 Mich 289, 307; 505 NW2d 528 (1993).

After it became clear that the prosecutor had sent Smith's photo to the victim shortly before trial, Smith did not move for suppression of the victim's in-court identification, demand a *Wade* hearing, or request a mistrial, even after the prosecutor conceded that his conduct was improper. Instead, the trial court permitted Smith an additional opportunity to cross-examine the victim about her identification of him as the gunman. Because Smith failed to request a *Wade* hearing, the trial court did not make any findings regarding the victim's ability to identify him independent of the e-mail photo. Accordingly, we must examine the available record to determine whether the e-mail photo likely affected Smith's substantial rights because the victim lacked an independent basis for her in-court identification of him.

The following factors are used to determine whether an independent basis exists for the admission of an in-court identification:

> (1) [P]rior relationship with or knowledge of the defendant; (2) opportunity to observe the offense, including length of time, lighting, and proximity to the criminal act; (3) length of time between the offense and the disputed identification; (4) accuracy of description compared to the defendant's actual appearance; (5) previous proper identification or failure to identify the defendant; (6) any prelineup identification lineup of another person as the perpetrator; (7) the nature of the offense and the victim's age, intelligence, and psychological state; and (8) any idiosyncratic or special features of the defendant. [*Davis,* 241 Mich App at 702–703.]

According to the record developed at trial, the victim looked at the gunman's face during the offense when he asked her for the time, and told her, "I'm not playing with you, bitch" while pointing a gun in her face. Briefly after she was robbed, the victim provided a description of the gunman's general physical appearance and clothing, which closely resembled Smith's appearance and clothing at the time of his arrest.[9]

Before identifying Smith, the victim ruled out another suspect that the police had asked her to view. The victim was thereafter taken to a bus stop near the crime scene where she identified Smith as the gunman who robbed her. The victim also identified Smith at trial, and testified that her identification was not based on the e-mail photo she received before trial, but rather on her independent memory of the offense. The victim also offered an explanation for her hesitancy to affirmatively identify defendant Smith at the preliminary examination.

Together, these factors support the existence of an independent basis for the victim's identification testimony. Because the record contains an independent basis for the victim's

---

[9] Again, Smith was arrested soon after the robbery occurred.

identification of Smith, and the trial court afforded Smith ample opportunity to cross-examine the victim on her identification testimony—including the effect, if any, of the e-mail photograph—Smith has not established that the prosecutor's improper conduct in sending the e-mail photo to the victim shortly before trial affected his substantial rights.[10]

## E. SCORING OF THE SENTENCING GUIDELINES

"Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id.*

Here, Smith unconvincingly argues that the trial court erred in assessing 10 points each OVs 4 and 14 of the sentencing guidelines.

### 1. OV 4

OV 4 assigns points based on psychological injury to a victim. Ten points are scored when "[s]erious psychological injury requiring professional treatment occurs to a victim." MCL 777.34(1)(a). In scoring OV 4, "the fact that treatment has not been sought is not conclusive." MCL 777.34(2). In this case, the victim testified that she felt terrified, traumatized, and overwhelmed by the robbery. She was scared at the time of the preliminary examination, and still felt scared at the time of trial. According to the presentence report, the victim was afraid to go out at night or leave her home. She quit her job because her employer would not allow her time off from work to deal with the trauma caused by the robbery. This evidence therefore supports the trial court's 10-point score for OV 4. See *People v Apgar*, 264 Mich App 321, 329; 690 NW2d 312 (2004).

### 2. OV 14

OV 14, which takes the offender's role into account, is scored at 10 points if "[t]he offender was a leader in a multiple offender situation." MCL 777.44(1)(a). Smith argued at sentencing that he was not the leader in the robbery because Littlejohn testified that Dunbar had control over the gun and the money. However, Littlejohn was not present when the robbery occurred and her knowledge of the events was second-hand. According to the victim, Dunbar appeared to be positioned as a lookout while defendant Smith took the more active role in approaching the victim and committing the robbery. In light of the evidence that it was

---

[10] Smith also cites non-applicable case law to argue that the prosecutor knowingly presented false testimony by asking the victim questions on his identification. There is nothing in the record to suggest that the victim's identification testimony was false, much less that the prosecutor knew it was false. And, as observed above, the trial court afforded Smith ample opportunity to cross-examine the victim regarding her identification testimony—an opportunity that protected his right to a fair trial.

defendant Smith who approached the victim and demanded her money while armed with a gun, and that Dunbar's role was passive, the trial court did not err in finding that defendant Smith was the leader. Therefore, the court did not err in assessing 10 points for OV 14.[11]

Affirmed.

/s/ Michael J. Riordan
/s/ Henry William Saad
/s/ Michael J. Talbot

---

[11] Defendant also makes a multitude of arguments in his Standard 4 brief, some of which his attorney raised at trial, which we have rejected. The remaining issues are totally without merit.